My name is Chad Freeborn. May it please the court, Chad Freeborn here on behalf of the estate of Rogers. I would like to reserve five minutes for rebuttal. We've appealed this matter and we've asked this court to reverse the dismissal of our claims by the district court and remand this matter for trial. We've done so for three reasons. First, when the district court considered our summary judgment motion, because of the order in which he considered the cross motions for summary judgment, he didn't consider our motion for summary judgment. And so essentially what he did was, or what the court did, was looked at the motion to strike the experts, denied the motion to strike the experts, decided Naphcare's motion for summary judgment, and then found our motion is moot. Well, if he was right on the other things, your motion is moot, yes? Well, the fact is, is that a number of the things in the court's order that he claims are missing, claiming that he's missing that we didn't say that there was, what the policy was, or that there wasn't testimony from Dr. Layton or Dr. Rogers as to the causation, or any of those sort of things, those are included in our motion. And that was the purpose, is to show a duty. And the court's required to consider both motions independently, and they're also required to consider all of the materials before it. And the order simply states that our motion was moot, so that there's no direction as to what materials were actually considered, and whether in fact he did consider that evidence. And it's important because it leads me to my second point, which is the court misapplied the summary judgment standard when the court weighed the evidence. You can see in the court's decision is that on page 3 in the court's orders, you know, from pages 3 to 30 in the record, but on page 3 of the order, the court starts to recitate the facts. And as he's going through the facts, the court just talks about all of the number of issues that are in dispute. And they're talking about the fact whether the patient was properly medicated, whether there was a therapeutic dose, even states that all the experts agreed that a non-therapeutic dose was not provided, that the anti-psychotic medicine wasn't being applied. There was a dispute as to whether the screenings were done properly. And so all of these facts are in dispute. And then all of a sudden as the court goes through the analysis of the claims, the court then just decides to take a side. Here's my problem with where I think you're going. And that is with respect to 1983, you're not suing the individuals. You're suing the corporation. So you've got to show as if the corporation were a county under our case law. So you've got to show a policy, not just that there was negligence in the treating of this individual plaintiff. And the same is true with respect to your Washington state law claim for corporate negligence. The only claim for which that may or may not be true is wrongful death. So what do you have to show to show wrongful death? Is it enough to show that there would have been individual liability had an individual been sued? Is this a respondeat superior claim? Or does it follow the same analysis basically of both the 1983 and corporate liability claim? Well, you've got to show some wrongdoing or policy by the corporation. Was that too long a question? No, that's fine. In response to that question, in the record at page 518, there's a deposition testimony of Amanda Spade. Amanda Spade was a nurse at NAFCARE. And in looking at this, the court was talking about this agreement, this contract analysis, and saying we were talking about, you know, that this is a contract and a contract can't, you know, determine liability. But the overall policy of NAFCARE was based upon an agreement that it had with Spokane County. They're saying, pursuant to their agreement, that they didn't have a duty to treat mentally ill inmates. And so that goes to the question. I don't think they're saying that. They just have different people treating different aspects of it. What's wrong with that? Well, because the Spokane County employees are not qualified to treat a person with schizophrenia. As in Dr. Layton's opinion, schizophrenia is different. It requires medication. It requires counseling. Well, the medication side of things, only the NAFCARE employees could provide. And that's why NAFCARE employed a psychiatrist. That's why they employed a licensed psychiatric nurse. But NAFCARE is providing medication. It may not have been sufficient. It may not have been perfectly appropriate. But it wasn't as though they said, we're not treating this guy. Well, they did. Because in Ms. Spade's deposition, I was asked why she didn't complete any of the forms or why NAFCARE employees didn't complete any of the intake forms. I thought the intake form was ultimately completed. That's not correct. That's not correct? That's not correct. And if you look at the intake forms and there's all the materials at page 1440 to 1517, if you go through all of those, when they're done, and this is one of the biggest problems with the court's ruling, is that they get to a point within those forms and then ask them to make a referral to a psychiatrist or somewhere other than what's been going on. Because he's had three suicide attempts, the medication doesn't seem to be working, and when Ms. Spade was deposed, she's, we don't do that. We're not allowed to make referrals. We're not allowed to do those sort of things. And so when they're talking about integrating the system with the Spokane County Jail and sharing a record system, when those records aren't complete, when they're not filling out those intake forms, so when they're not filling out all of those things, then basically the records that the Spokane County counselors are relying upon are incomplete records. And if they're saying, well, it's… Well, I thought that initially they weren't able to fill out the form because Mr. Rogers refused to cooperate, but that the following morning a second nurse was able to complete the form, and I think it's at Volume 5 of the appendix at 1085 to 1104. Is that not correct? That's not correct. If the court goes back and reviews those materials, there was an initial nurse, I believe her name was Tabisca Bruce. She did the initial intake, and when she tried to complete that form, she stops. And then the next nurse, whose name is escaping me at the time… And she stops. Are you disputing that she stopped because he refused to cooperate? Well, I mean, maybe at that time. But, I mean, if you go further on, on December 22nd… So where's the violation of a policy? Well, I mean, on December 22nd, Judith Randall, the psychiatric nurse, does an evaluation of Mr. Rogers. And in that evaluation, all of the signs point to the fact that he's having hallucinations, is suicidal, and she fills out the same form. And in that same form, that psychiatric nurse does not make a referral for treatment for Mr. Rogers. And so that form's not even complete. And if you go through from 1440 to 1517 in the record, and if you look at from the time he was booked all the way through the 37 days that he was there, every different evaluation that had occurred, none of those forms are completed with regard to mental health. How has that turned into a bad policy rather than bad practices by the individuals? Assuming, I'll go with you for the moment, that these are bad practices by the individual nurses. Why is that a bad policy? Because it's not the individual nurses who are choosing to do this. NAFCAIR has directed its employees not to treat mentally ill inmates. They're basically saying, we have an agreement, and based upon our agreement… Ms. Spade says to its employees, we do not treat mental illness. On 518 of the record, the deposition of Amanda Spade, Ms. Spade talks about the fact that I asked her in her deposition, why didn't you follow up to see if medication was working? That's not my job. I don't do that. Did you review a history of Mr. Rogers' prior schizophrenia and suicidal behavior? No. Why not? I don't do that because we don't treat mental health. Why didn't you make a referral? I don't have the ability to do that because we don't treat mental health. That's coming from NAFCAIR. That's not Ms. Spade. So, as I understood, the policy is the nurses couldn't treat that, but they were required to refer the inmate to the county's mental health practitioner, and then that person in turn could refer them to a psychiatrist. That's why NAFCAIR had psychiatrists. Well, this is the part about that, is that you're having a nurse, and under Washington law, and this is why we, in our summary judgment motion, put the whack and the standards for nurses in the state of Washington. They cannot delegate duties to people who are unqualified to perform the task. If Nurse Randall, who's a NAFCAIR employee, a licensed psychiatric nurse, finds out that Mr. Rogers needs a referral to a psychiatrist or needs some other sort of different treatment, you're having a psychiatric nurse make a referral to a social worker, so a social worker can make a determination as to medical care of whether or not they need to be referred back to NAFCAIR's psychiatrist. This is what I'm talking about. NAFCAIR simply just directed its employees, don't treat mentally ill patients, let that be the county's issue. But the fact of the matter is, is that Mr. Rogers, for instance, with his schizophrenia, required medication. No Spokane employee could prescribe, administer, or monitor his medication. That was all NAFCAIR. Wasn't he given medication? Excuse me, I'm sorry. Wasn't he given medication? He was given medication, the incorrect dose, and no one followed up to see whether or not it worked. And so giving someone, I guess one of the challenges here is in order to, I think NAFCAIR is saying that if it's not their entire duty, if that's not their entire responsibility, the county shares responsibility for it. What do you have to show to establish NAFCAIR's violation of the Constitution, deliberate indifference? Does it violate the Constitution for them to proceed with an understanding that that's someone else's job? Because those other people aren't before us. It would be, and I think about it this way, is that if, and this is why we got into the contract, and I think the court kind of went away from that, but what it comes down to is the nurses who are practicing in the Spokane County Jail can't operate in this manner. They can't. If they're treating somebody and they see the signs of a need for a referral, and you see this with Mr. Rogers, they have to make a referral. They have to provide treatment. They can't just throw up their hands and say, we're not going to do this because this is somebody else's responsibility. And this is why we cited to the WAC and the RCWs about the standard of care. Do you think you've established a dispute as to NAFCAIR's awareness that the rest of the system can't handle this? Wouldn't you need to? Well, it would be, and that's the thing about it. It's interesting because NAFCAIR's entire defense in this case is we had an agreement with Spokane County that we didn't have to do this. So therefore, when we have a written policy, NAFCAIR's written policy, for instance, says that every time they fill out all these forms that we discussed at the beginning, that they had to check all of the boxes no matter what. And if any of those boxes required a checkmark, that they had to make the necessary referrals. None of those boxes are checked. And so that establishes the unwritten practice and custom of the policy of NAFCAIR not to treat the mentally ill patients. And so when you come, and that's what the court said, well, you didn't show that there was a written policy. You didn't show that there was any of those sort of things. And the fact of the matter is that we did show that because the paperwork speaks for itself. They didn't even follow their own policy, and according to Nurse Spade, it was at the direction of the employer. Okay. Well, thank you. We'll save a couple minutes of your time. Thank you. Mr. Ballard? Thank you. Thank you for the court's indulgence. Good morning. May it please the court. Jonathan Ballard on behalf of Appellee NAFCAIR, Inc. I present today to request that this court affirm the trial court's orders granting summary judgment where appellant's claims fail as a matter of law. Appellant's paramount argument asserts that the trial court failed to consider its own motion for summary judgment that was submitted at the same time as NAFCAIR's. I'd like to point out, however, that the district court's order expressly indicated that it reviewed all facts and evidence in support of the five motions then pending before it. That same order also expressly stated that the court was well informed. I'd also like to point out to the court that appellant did not submit any facts or evidence in support of its response to NAFCAIR's motions for summary judgment that was also not submitted in its own motion for summary judgment. In fact, it incorporated by reference its arguments from its motions for summary judgment in responding to NAFCAIR's motions for summary judgment. Furthermore, appellant's motion for summary judgment only addressed elements of duty and breach related to statutes on nursing conduct. The district court did not commit error in rendering that motion moot when it found that appellant failed to establish proximate causation. Turning next to the substantive issues on appeal, as to Monell, this court is well aware that there must be an underlying constitutional violation for liability to attach to NAFCAIR as an entity itself. Without that, the claim fails as a matter of law. You need some sort of custom policy practice, deliberate indifference, and so on. Yeah, so we just heard that at ER 518 in the record, there's a statement by a nurse that said, well, this wasn't, at least as it was just described to us as I heard it, this is our policy, we don't do this. How do you respond? Thank you, Your Honor. I'd be happy to respond to that. Appellant takes testimony from some NAFCAIR nurses out of context to suggest that NAFCAIR did not treat mental health or relied on unqualified nurses or Spokane County's mental health professionals for medication management. The argument ignores that the medical nurses are not qualified to assess mental health patients, and that's exactly why that scope was appropriately provided by Spokane County's mental health professionals and its mental health case manager. Furthermore, mental health professionals and medical nurses are not qualified to manage medications. Medical nurses in a jail are responsible for medication administration, which is known as MedPass in a jail. That's simply to pass out the medications and ensure that they're taken. It was NAFCAIR's nurse, a psychiatric nurse practitioner and psychiatrist who were responsible for medication management for Mr. Rogers, and that's exactly what they did here. I know that appellant also cites the testimony to indicate that the failure to provide mental health treatment was done at NAFCAIR's direction, but appellant cites to no evidence whatsoever that there was a NAFCAIR person with authority on policymaking that directed anyone to follow this claimed unwritten policy to not provide treatment at the jail. There's no indication of who it was, how it was communicated, when it was communicated. It's simply unsubstantiated by the record.  I'd like to continue with my assertion that there must be an underlying constitutional violation in support of Monell. I think that without an underlying constitutional violation, we don't even get to policy. And here, at best, to show a constitutional violation, appellant argues allegations where certain employees did not meet the standard of care or did not follow codes of conduct for nursing practice. None of these can be a basis for a constitutional violation. This court knows that the conduct must rise to a level of deliberate indifference, which is a high standard of fault requiring an intentional decision that put Mr. Rogers at substantial risk of harm, and that was objectively unreasonable under the circumstances. That doesn't save you on the Washington claim for corporate negligence, though. There's a slightly different standard for that. Is that right? Yes, there certainly is. I can address the corporate negligence claim very easily. In Washington, expert testimony is required to establish the corporate standard of care for a medical contractor like NAFCARE providing services in jails. Appellant offered none of that testimony, and he also offered no expert testimony to show that NAFCARE as an entity breached that standard of care or that NAFCARE's conduct, again as an entity, caused the harm in question. Appellant argues that NAFCARE owed an independent duty to supervise its employees, but their experts offered no opinions whatsoever on supervision or even training of the employees. Both of the experts also acknowledge that they didn't even review any of NAFCARE's policies or procedures in this case. Appellant attempts to use expert testimony regarding alleged medical negligence of NAFCARE employees as evidence of corporate negligence, but as the district court noted, that is not the relevant inquiry on a corporate negligence claim. In Washington, a corporation cannot be liable for ordinary medical negligence where a corporation is legally precluded from practicing medicine. I'd like to turn next to the issues surrounding a policy that had been put forth by Appellant. As indicated, even if Appellant could somehow show a constitutional violation, they failed to show that there was an unwritten policy by NAFCARE at the Spokane County Jail to withhold mental health treatment. Mr. Ballard, what else would a plaintiff have to show to establish that? You have multiple discussions of potential carelessness in the administration of it. Your friend points to testimony in the record. What's missing there to establish the violation in the policy? Well, like I said, it has to be something more than mere negligence. It has to rise to a level of deliberate indifference, and none of the assertions claimed by Appellant rise to that level. Why couldn't a plaintiff establish deliberate indifference through pervasive negligence of individual employees? I think that that is possible, but in this case, Appellant's claims are controverted by the evidence. Okay, and so what is that? What is missing from that claim? Certainly, well, what Appellant points to is that NAFCARE had a policy not to treat mental health at the jail, right? This argument completely ignores that Spokane County had its own mental health professionals and a mental health manager staffed at the jail who worked in conjunction with NAFCARE to treat mental health conditions. Spokane County, like NAFCARE, even had its own separate policies and procedures for its staff. NAFCARE's mental health treatment at the jail included screening for mental health conditions at booking and having a psychiatric nurse practitioner and a psychiatrist to order and manage mental health medications. Appellant argues that this intake screening wasn't done as an example of some conduct to describe either a potential constitutional violation or some sort of policy. But like I said, it's controverted by the evidence. Mr. Rogers was initially uncooperative, you're correct, and he was placed on suicide watch because he made some comments to the police that were concerning. The very next morning, Mr. Rogers was screened, and he was referred to Spokane County's mental health professional who did a full mental health evaluation at that time. At that same time these things were going on, NAFCARE ordered Mr. Rogers outside medical records to confirm the medications that he was on, and the very next day his antipsychotic medications were ordered and given to him. None of this is evidence of, I would suggest, not even medical negligence and certainly doesn't rise to the level of a constitutional violation. Thank you. I'd also like to point out as well that appellant is only able to point to Mr. Rogers' isolated experiences as evidence of policy. But based on longstanding Monell jurisprudence, isolated experiences cannot serve as a basis for liability. What's the standard? You keep focusing on 1983, and it seems to me that's your strongest defense. What do you do with the wrongful death? What's the standard that NAFCA has to satisfy on the wrongful death claim under Washington law? Well, it's appellant's burden to establish that. What is the burden? What's the standard? Appellant expressly abandoned any respondent's superior claims against NAFCA, and because of that, the wrongful death claim does not survive. Furthermore, those... Wait a minute. You went over that a little too quickly for me. In your view, there's an abandonment of the wrongful death standard. If it had not been abandoned, is the wrongful death standard respondent superior? Well, certainly under a wrongful death claim in the state of Washington, the elements of negligence would apply, right? And because here it's medical treatment that is at issue, it would be the statutory scheme that governs medical negligence for the state. And here, respondent superior, as to NAFCA, may attach, but like I said, respondent superior claims were expressly abandoned by appellant in this case. Now, maybe you don't have it right in front of you. Can you tell me where they were expressly abandoned? I mean, you can abandon by never mentioning it, which means I've got to read the whole record, but you just said they were expressly abandoned. Sure. They were in the pleadings on the briefing on the motions for summary judgment. Appellant expressly abandoned the respondent's superior claims. I don't have that pen sight in front of me at the moment, but I can certainly provide that to the court. If we ask. Okay. Yeah. Thank you, Your Honor. With the time that I have remaining, I wanted to continue to address this policy issue because I think it's important. As indicated, isolated experiences cannot serve as a basis for liability. There must be an indication of an unconstitutional policy of sufficient duration and frequency so that it was well-settled practice. Appellant does argue in his briefing, although not mentioned today, that a single instance of a constitutional violation is sufficient to show policy. However, this is only applied in rare circumstances where fault and causation are obvious. I would assert here that there is no obvious fault and causation, and as indicated earlier, appellant's contention that NAFCA directed its employees to withhold mental health treatment is unsubstantiated in the record. Appellant, in their briefing, also points... Yes, I understand the policy, but I want to make sure I have this right. So the nurses were directed, rather than treating or attempting to treat mental health problems, to refer those inmates to a mental health professional. And the mental health professional, in turn, could refer them to a psychiatrist, and a psychiatrist would be the one who would determine what medication and in what amounts could be given, rather than leaving it to someone who is not a medical doctor. Do I have that as the basic policy? Well, I think what the facts show here, Your Honor, is that medical nurses are not qualified to assess mental health conditions, and that is exactly why they were referred to Spokane County's mental health professionals. And the mental health professionals themselves also aren't qualified to manage medications, and that's exactly why NAFCA... So that policy on its face, I want to hear from your adversary, I rebuttal, but sounds like a perfectly sensible policy. And then, far from an unconstitutional one, not even a wrongful one, and then, as I understand, that was what was carried out in this case. Am I wrong on that? No, I would tend to agree with you. In fact, the psychiatric nurse practitioner is the one that has the prescribing authority, and that is exactly why she was involved in ordering the medications and monitoring those medications about Roger's situation. After the doctor has determined what medication and in what amounts, which only a doctor presumably is fit to determine, then the nurse practitioner administers it. Well, the nurse practitioner has prescribing authority, and here I think it's also important to point out as well that that nurse practitioner consulted with NAFCA staff psychiatrists on at least two occasions in the medication regimen that should be provided for Mr. Rogers. And in addition, towards the end, he was repeatedly put under suicide watch. Exactly. I'd like to, with the time, the very brief time that I have left, I'd like to speak very quickly about Dawson, which is a case that Appellant points out to show historical evidence of a constitutional violation. That case is highly distinguished. It involved evidence that an intake screening was not done. Here, the overwhelming evidence shows that that intake screen was, in fact, done. Thank you, Your Honors. I request that the lower court's decisions on summary judgment are affirmed. Thank you, Mr. Ballard. Mr. Freeborn. Thank you. As counsel just mentioned, the Dawson case, very similar to this, Western District of Washington case. NAFCA was the defendant. Ironically, on January 3rd of 2018, which is the day that Mr. Rogers was found, is the same day that the individual in the Dawson case was found dead in a jail. In that case, the same issue, failure to screen. And so if the court goes back and examines the record, like I invited the court to, and from pages 1440 to 1517, and you look at the substantial amount of records and intakes and different things that were done, and if you look at the holding in the Dawson case, which basically found that there's a question of fact as to whether or not the failure to screen would be sufficient to a failure to train. I understand that you say the forms weren't filled out, but there was screening. I gather the evidence tells us that, at least as the first form, it was hard to fill out the form because his mental illness was preventing that. But it's very clear that everybody understood that he was schizophrenic, that he did need medication. He was medicated. I mean, there's a dispute as to whether he was properly medicated, but they understood the basic problem. So why is this a failure to screen case? Because if NAFCARE is intentionally not filling out the records... As the first nurse, that's not true. She couldn't do it because he was having difficulties because of his schizophrenia. But that's one small sliver of multiple screenings that took place over the 37 days he was there. If they're not completing the records and entering into a system that's supposed to be integrated for other counselors to rely on, then how can those counselors treat when they don't have the necessary information? And so basically that policy, that goes to... They did have information. They knew he was schizophrenic. They knew or at least suspected he was suicidal. There's some dispute as to whether or not it was suicide attempt or autoerotic asphyxiation. His mother thought it was the latter. But clearly they had some reason to believe that he was suicidal. What information do you think they should have had that they did not? I'm beyond time. May I respond?  My response to that is simply this, is that he attempted to commit suicide three times during the time he was there. The NAFCARE employees kept coming to the same conclusion, which would be... He never saw Dr. Peterson, who's the actual psychiatrist. He never, as Judge Ravkoff was just talking about, never made it around. That policy seems good in practice to have it here, refer it there, and then make it come back. But the fact of the matter is, is these nurses kept not making the necessary referral directly up to the chain to the only person that could have helped him was the only person who never saw him. And that was based upon their policy not to do so. I know you're over time, but if I could ask one question. It was just represented to us by your adversary that you abandoned, with respect to wrongful death, any argument that respondent superior was the standard. Is that true? I don't recall doing that. The only thing that I... Don't make that argument much in your briefs to us, I have to say. Right. I mean, I think the main focus of the brief was on the fact that for a Mon-El claim, you can't have respondent superior be the basis for that. And I think that that was the focus of that. I'm not talking about the Mon-El claim, I'm talking about the wrongful death claim. Right. And I think that that's what I'm saying, is that to the extent that there was talking about the respondent superior claim, I was, I think, avoiding that for the purposes of the Mon-El claim. But I don't recall expressly getting rid of that. Thank you. Thank you. Thank you, Mr. Freeborn. All right. The case is submitted.
judges: FLETCHER, JOHNSTONE, Rakoff